UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | : | 07 Civ. 5392 (RMB) (FM) |
| | : | ANSWER OF |
| Plaintiff, | : | CONSOLIDATED EDISON COMPANY OF NEW YORK, |
| -against- | : | INC. TO RONALD A. KATZ TECHNOLOGY LICENSING, |
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., MACY'S INC. | : | L.P.'S COMPLAINT FOR PATENT INFRINGEMENT, |
| (F/K/A FEDERATED DEPARTMENT STORES, INC.), BLOOMINGDALES BY | : | AND COUNTERCLAIM |
| MAIL LTD., BLOOMINGDALES, INC., FDS BANK, FACS GROUP, INC., AND | : | |
| WEBSTER BANK, N.A., | : | Hon. Richard M. Berman |
| | : | ECF Filed |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Defendant Consolidated Edison Company of New York, Inc. ("ConEd") hereby answers the Ronald A. Katz Technology Licensing, L.P. ("RAKTL") Complaint For Patent Infringement ("Complaint") as follows:

## THE PARTIES

1.      ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint and therefore denies the same.

2.      ConEd admits that ConEd is a corporation organized under the laws of the state of New York and has a place of business at 4 Irving Place, New York, NY 10003.

3.      ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint and therefore denies the same.

4.      ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint and therefore denies the same.

5.      ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint and therefore denies the same.

6.      ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint and therefore denies the same.

7.      ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint and therefore denies the same.

8.      ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint and therefore denies the same.

## JURISDICTION AND VENUE

9.      ConEd admits that this is a civil action for patent infringement arising under the United States patent statutes, 35 U.S.C. § 1 *et seq*.

10.     ConEd admits that this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

11.     ConEd admits only that it is subject to this Court's personal jurisdiction and denies all of the bases on which such personal jurisdiction is premised.  ConEd admits that it has designated an agent for service of process in the State of New York.  ConEd denies the remaining allegations in paragraph 11 of the Complaint.

12.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint and therefore denies the same.

13.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint and therefore denies the same.

14.     ConEd admits that venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

-2-

## BACKGROUND FACTS

15.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint and therefore denies the same.

16.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint and therefore denies the same.

17.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and therefore denies the same.

18.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and therefore denies the same.

19.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and therefore denies the same.

20.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint and therefore denies the same.

21.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint and therefore denies the same.

22.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint and therefore denies the same.

23.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and therefore denies the same.

24.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint and therefore denies the same.

25.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint and therefore denies the same.

26.     ConEd admits that Katz Technology Licensing, through its licensing arm A2D, L.P., has contacted ConEd regarding certain of the patents-in-suit.  ConEd lacks knowledge or

-3-

information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint and therefore denies the same.

## THE PATENTS-IN-SUIT

27.    ConEd admits that the '968 patent is entitled "Statistical Analysis System For Use With Public Communication Facility," and on its face names Ronald A. Katz as inventor and lists December 20, 1988, as the issue date. ConEd admits that the term of the '968 patent extended no later than December 20, 2005. ConEd denies the remaining allegations in paragraph 27 of the Complaint.

28.    ConEd admits that the '150 patent is entitled "Telephonic Interface Control System," and on its face names Ronald A. Katz as inventor and lists May 29, 1990, as the issue date. ConEd admits that the term of the '150 patent extended no later than December 20, 2005. ConEd denies the remaining allegations in paragraph 28 of the Complaint.

29.    ConEd admits that the '984 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face names Ronald A. Katz as inventor and lists July 7, 1992, as the issue date. ConEd denies the remaining allegations in paragraph 29 of the Complaint.

30.    ConEd admits that the '252 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face names Ronald A. Katz as inventor and lists October 19, 1993, as the issue date. ConEd denies the remaining allegations in paragraph 30 of the Complaint.

31.    ConEd admits that the '309 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor and lists October 19, 1993 as the issue date. ConEd admits that the term of the '309 patent extended no later than December 20, 2005. ConEd denies the remaining allegations in paragraph 31 of the Complaint.

DM_US:20597243_1

32.     ConEd admits that the '285 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face names Ronald A. Katz as inventor and lists September 27, 1994, as the issue date. ConEd admits that the term of the '285 patent extended no later than December 20, 2005. ConEd denies the remaining allegations in paragraph 32 of the Complaint.

33.     ConEd admits that the '707 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor. ConEd admits that the term of the '707 patent extended no later than December 20, 2005. ConEd denies the remaining allegations in paragraph 33 of the Complaint.

34.     ConEd admits that the '863 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor and lists November 4, 1997, as the issue date. ConEd admits that the term of the '863 patent extended no later than December 20, 2005. ConEd denies the remaining allegations in paragraph 34 of the Complaint.

35.     ConEd admits that the '156 patent is entitled "Telephonic-Interface Lottery System," and on its face names Ronald A. Katz as inventor and lists July 28, 1998 as the issue date. ConEd admits that the term of the '156 patent extended no later than December 20, 2005. ConEd denies the remaining allegations in paragraph 35 of the Complaint.

36.     ConEd admits that the '551 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor and lists September 29, 1998, as the issue date. ConEd admits that the term of the '551 patent extended no later than December 20, 2005. ConEd denies the remaining allegations in paragraph 36 of the Complaint.

37.     ConEd admits that the '734 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face names Ronald A. Katz as inventor and lists October 27, 1998, as the issue date. ConEd denies the remaining allegations in paragraph 37 of the Complaint.

-5-

38.    ConEd admits that the '762 patent is entitled "Telephonic Interface Statistical Analysis System" and on its face names Ronald A. Katz as inventor and lists April 27, 1999, as the issue date.  ConEd admits that the term of the '762 patent extended no later than December 20, 2005.  ConEd denies the remaining allegations in paragraph 38 of the Complaint.

39.    ConEd admits that the '893 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face names Ronald A. Katz as inventor and lists June 29, 1999, as the issue date.  ConEd admits that the term of the '893 patent extended no later than December 20, 2005.  ConEd denies the remaining allegations in paragraph 39 of the Complaint.

40.    ConEd admits that the '120 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face names Ronald A. Katz as inventor and lists October 26, 1999, as the issue date.  ConEd denies the remaining allegations in paragraph 40 of the Complaint.

41.    ConEd admits that the '021 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as an inventor and lists March 7, 2000, as the issue date.  ConEd admits that the term of the '021 patent extended no later than December 20, 2005.  ConEd denies the remaining allegations in paragraph 41 of the Complaint.

42.    ConEd admits that the '135 patent is entitled "Telephonic-Interface Lottery System," and on its face names Ronald A. Katz as an inventor and lists March 28, 2000, as the issue date.  ConEd admits that the term of the '135 patent extended no later than July 10, 2005.  ConEd denies the remaining allegations in paragraph 42 of the Complaint.

43.    ConEd admits that the '065 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor and lists November 14, 2000, as the issue date.  ConEd admits that the term of the '065 patent extended no later than July 10, 2005.  ConEd denies the remaining allegations in paragraph 43 of the Complaint.

-6-

44.     ConEd admits that the '965 patent is entitled "Voice-Data Telephonic Interface Control System," and on its face names Ronald A. Katz as inventor and lists January 1, 2002, as the issue date.  ConEd admits that the term of the '965 patent extended no later than December 20, 2005.  ConEd denies the remaining allegations in paragraph 44 of the Complaint.

45.     ConEd admits that the '703 patent is entitled "Telephonic-Interface Lottery System," and on its face names Ronald A. Katz as inventor and lists July 23, 2002, as the issue date.  ConEd admits that the term of the '703 patent extended no later than July 10, 2005. ConEd denies the remaining allegations in paragraph 45 of the Complaint.

46.     ConEd admits that the '223 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face names Ronald A. Katz as inventor and lists August 13, 2002, as the issue date.  ConEd admits that the term of the '223 patent extended no later than July 10, 2005.  ConEd denies the remaining allegations in paragraph 46 of the Complaint.

47.     ConEd admits that the '360 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor and lists January 13, 2004, as the issue date.  ConEd admits that the term of the '360 patent extended no later than July 10, 2005.  ConEd denies the remaining allegations in paragraph 33 of the Complaint.

## COUNT I
### (PATENT INFRINGEMENT BY CONSOLIDATED EDISON)

48.     ConEd incorporates by reference its responses to paragraphs 1-47 of the Complaint.

49.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 and therefore denies the same.

-7-

50.     ConEd admits that it provides certain energy and utility customer services over the telephone.  ConEd denies the remaining allegations of paragraph 50 of the Complaint.

51.     ConEd denies the allegations of paragraph 51 of the Complaint.

52.     ConEd denies the allegations of paragraph 52 of the Complaint.

53.     ConEd denies the allegations of paragraph 53 of the Complaint.

54.     ConEd denies the allegations in paragraph 54 of the Complaint.

### COUNT II
### (PATENT INFRINGEMENT BY THE MACY'S DEFENDANTS)

55.     ConEd incorporates by reference its responses to paragraphs 1-54 of the Complaint.

56.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 and therefore denies the same.

57.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57 and therefore denies the same.

58.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 and therefore denies the same.

59.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 and therefore denies the same.

60.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60 and therefore denies the same.

61.     ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61 and therefore denies the same.

DM_US:20597243_1

## COUNT III
### (PATENT INFRINGEMENT BY WEBSTER BANK)

62.    ConEd incorporates by reference its responses to paragraphs 1-61 of the Complaint.

63.    ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 and therefore denies the same.

64.    ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 and therefore denies the same.

65.    ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 and therefore denies the same.

66.    ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 and therefore denies the same.

67.    ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 and therefore denies the same.

68.    ConEd lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 and therefore denies the same.

### FIRST AFFIRMATIVE DEFENSE
### (Non-Infringement)

69.    ConEd does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the one or more claims asserted by RAKTL of the '150, '984, '285, '863, '551, '734, '762, '893, '120, '065, '965, '223 and '360 patents (hereinafter "the Count I Patents") individually or collectively.

DM_US:20597243_1

## SECOND AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

70.    RAKTL is estopped from maintaining that the one or more claims of the Count I Patents cover any telephone systems operated by ConEd.

## THIRD AFFIRMATIVE DEFENSE
### (Invalidity Under 35 U.S.C. §§ 101, 102, 103 and 112)

71.    The one or more claims asserted by RAKTL of the Count I Patents are invalid for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103 and 112.

## FOURTH AFFIRMATIVE DEFENSE
### (Inequitable Conduct)

72.    The Count I patents are unenforceable for inequitable conduct committed before the United States Patent and Trademark Office during the prosecution of the applications that issued as these patents and/or related applications as described with particularity in the averments of ConEd's Counterclaim below, which averments are realleged and reincorporated herein by reference as if set forth in full.

## FIFTH AFFIRMATIVE DEFENSE
### (Waiver/Estoppel/Laches)

73.    RAKTL's claims are barred by the equitable doctrines of waiver, estoppel and/or laches.

74.    The patents-in-suit are unenforceable due to prosecution laches in light of RAKTL's unreasonable delay in seeking the claims of the patents-in-suit.

75.    The patents-in-suit are unenforceable due to laches in light of RAKTL's unreasonable delay in asserting the claimed inventions.

## SIXTH AFFIRMATIVE DEFENSE
### (Unclean Hands/Patent Misuse)

76.    RAKTL is barred from any relief in this action, and the '734, '120 and '223 patents, among others, are unenforceable under the doctrines of unclean hands and/or patent

DM_US:20597243_1

misuse, because RAKTL has asserted the '734, '120 and '223 patents, as well as other patents, with knowledge that at least one claim in each of these patents is invalid.

## SEVENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

77.    To the extent RAKTL seeks damages for alleged infringement more than six years prior to the filing of the present litigation, RAKTL's claims are barred by the statute of limitations under 35 U.S.C. § 286.

## EIGHTH AFFIRMATIVE DEFENSE
### (Notice/Marking)

78.    RAKTL is precluded by 35 U.S.C. § 287 from seeking damages for any alleged infringement prior to providing actual notice of the patents-in-suit to ConEd.

## NINTH AFFIRMATIVE DEFENSE
### (Collateral Estoppel/ Res Judicata)

79.    RAKTL is barred from any relief in this action as to the '734, '120 and '223 patents under the doctrines of collateral estoppel and/or res judicata.  RAKTL has asserted claims or causes of action that have been litigated in prior proceedings at which RAKTL was given full and fair opportunity to litigate claims or causes of action and in which a final judgment was entered.


## COUNTERCLAIM
### (Declaratory Judgment Regarding Unenforceability)

Counterclaim plaintiff Consolidated Edison Company of New York, Inc., ("ConEd") alleges the following counterclaim against Counterclaim defendant RAKTL.

80.    ConEd incorporates by reference its responses in paragraphs 1-79.

81.    ConEd is a corporation organized under the laws of the state of New York and has a place of business at 4 Irving Place, New York, New York 10003.

-11-

82.    On information and belief, RAKTL is a limited partnership organized under the laws of the State of California, and having a principal place of business at 9220 Sunset Boulevard, #315, Los Angeles, California 90069.

83.    This Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201 and 2202, and 35 U.S.C. § 1, et seq.

84.    RAKTL has submitted to the personal jurisdiction of this Court.

85.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400 because RAKTL filed this action in this district.

86.    RAKTL purports to be the sole holder of the entire right, title and interest in the Count I Patents (the '150, '984, '285, '863, '551, '734, '762, '893, '120, '065, '965, '223 and '360 patents).

87.    RAKTL has sued ConEd in the present action, alleging infringement of one or more claims of the Count I Patents.  Thus, an immediate, real and justiciable controversy exists between RAKTL and ConEd with respect to the alleged enforceability of the Count I Patents.

88.    ConEd requests a declaratory judgment that the Count I Patents are unenforceable.

89.    Count I Patents are unenforceable for inequitable conduct committed before the United States Patent and Trademark Office during the prosecution of the applications that issued as these patents and/or related applications.

90.    During the prosecution of the applications that ultimately led to the issuance of the Count I Patents or the applications upon which priority is claimed, the named inventor, Ronald A. Katz, and/or his attorneys and appointed representatives, individually or collectively (hereafter "Katz"), engaged in inequitable conduct, thereby rendering these patents unenforceable.

91.    Upon information and belief, Katz committed acts or omissions, and/or exercised

-12-

a pattern or practice of conduct during the prosecution of the applications that issued as the Count I Patents and/or related applications in the Patent and Trademark Office, which violated the duty of candor owed by patent applicants, with the intent to deceive the Patent and Trademark Office and its agents into issuing patent claims of a scope beyond any to which Katz was entitled. This conduct included intentionally withholding material prior art from the Patent and Trademark Office, and making false and misleading statements.

## I.    Withholding Material Prior Art

### A.    Barger

92.    Katz's acts, omissions, pattern or practice of misconduct included, for example, its failure to disclose U.S. Patent No. 4,071,698 to Barger, Jr., et al. ("the Barger patent") to the Patent and Trademark Office during the prosecution of many of Katz's patents, including one or more of the Count I Patents. The Barger patent issued in January 1978.

93.    One or more of the Count I Patents are unenforceable as a result of Katz's misconduct pertaining to the Barger patent. Such misconduct occurred in one or more acts before the Patent and Trademark Office during the prosecution of the Count I Patents, or patents related thereto, or applications to which these patents allege priority. Misconduct also occurred in one or more acts before the Patent and Trademark Office during the prosecution of U.S. Patent Nos. 6,292,547 ("the '547 patent"), 5,073,929 ("the '929 patent"), 5,561,707 ("the '707 patent"), and 4,845,739 ("the '739 patent"), as well as the '150 patent and '285 patents of the Count I Patents. The misconduct includes, but is not limited to the following:

#### i.    Materiality

94.    The Barger patent teaches an interactive telephone voice system for marketing merchandise. The Barger patent discloses, among other things, that the customer selects and listens to an audio demonstration and may arrange payment by credit card or other means. The disclosed system maintains, for example, a complete record of all transactions, including

-13-

demonstrations selected by each customer, in order to maintain current inventory records and to determine trends. The system can use this transaction history, for example, to determine whether a customer is a "freeloader," and accordingly limit a customer's access to the system.

95.     As a further example, the system disclosed in the Barger patent is capable of assigning a caller to an operator, who obtains required information from the customer that is placed in a database. When the customer requests a specific demonstration, the operator enters the appropriate code into the system and plays it for the customer. Upon completion of the demonstration, the customer call reverts to a live operator, who will take the order.

96.     The Barger patent is relevant to claims prosecuted by Katz in many respects. As one example, the Barger patent teaches storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

97.     The Barger patent discloses many of the central features claimed by Katz in various patent applications.

98.     The Barger patent would have been material or relevant to the Patent and Trademark Office in deciding whether to issue patents on Katz's various patent applications.

99.     With respect to other Katz patents in the same or similar families as the patents-in-suit, third parties have relied on the Barger patent to petition the Patent and Trademark Office to reexamine certain Katz patents, including the '707 patent and the '547 patent. An examiner rejected certain of Katz's pending claims in the '707 or '547 patent applications based in part on the teachings of the Barger patent, and the Patent and Trademark Office Board of Patent Appeals and Interferences affirmed that rejection in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998), at 13. The '707 and '547 patents contain specifications substantially identical to that of the '739 patent.

-14-

### ii.   Intent

100.   The Barger patent was filed in the Patent and Trademark Office on or about January 1978, a full seven years before Katz's first relevant application.  Upon information and belief, Katz had knowledge of the relevance and materiality of the Barger patent to Katz's various claims pending before the Patent and Trademark Office since at least as early as December 1988.

101.   Upon information and belief, the European Patent Office sent a search report for one of Katz's corresponding European patent applications to Katz's European patent attorney, Graham Frederick Coles, in or around December 1988.  Upon information and belief, Mr. Coles sent a copy of the search report to Byard Nilsson, an attorney handling prosecution of many of Katz's applications, in or around January 1989.

102.   That search report identified the Barger patent as being "particularly relevant" to Katz's applications.

103.   Katz was under a duty to disclose to the Patent and Trademark Office information material to Katz's applications (including prior art cited in foreign patent prosecutions).  Katz failed to disclose the Barger patent to the Patent and Trademark Office during the prosecution of at least the '739, '929, '984, '150, '285 and '965 patents.

104.   On information and belief, Katz's failure to disclose the Barger patent was done deliberately and with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '739, '929, '984, '150, '285 and '965 patents.

105.   Katz's intentional failure to disclose the Barger patent, with knowledge of its materiality during prosecution of the '739 and '929 patents, as well as Count I patents '984, '150, '285 and '965, constitutes inequitable conduct.

-15-

### iii.    Unenforceability

106.    Katz was aware of both the significance and relevance of the Barger patent as alleged herein. Katz's failure to disclose the Barger patent to the Patent and Trademark Office during prosecution of at least the '739, '929, '984, '150, '285 and '965 patents constituted inequitable conduct.

107.    The '984, '150, '285 and '965 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

108.    The '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents are each related to the '739 patent by virtue of claiming priority from the '739 patent; thus the inequitable conduct that occurred during prosecution of the '739 patent infects and renders these patents unenforceable. In each above-identified Count I Patent, the subject matter of one or more claims includes Barger-related subject matter at issue during the prosecution of the '739 patent.

109.    The inequitable conduct that occurred during prosecution of the '739 patent also infects and makes unenforceable Count I Patents '893, '863, '551, '065, '360 and '134, each of which is closely related to the '739 patent (among others). The interrelatedness of these Count I Patents and the '739 patent is demonstrated, for example, by Katz having disclaimed for each of the '893, '863, '551, '065, '360 and '134 patents any patent term subsequent to the patent term of the '739 patent. In most instances, the disclaimer was in response to double patenting rejections made by the Patent and Trademark Office, which indicated that the claimed inventions were not patentably distinct.

110.    Thus, the '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents are each rendered unenforceable due to Katz's inequitable conduct during prosecution of the '739 patent.

DM_US:20597243_1

111.    In addition to claiming priority from the '739 patent, Count I Patents '965, '984, '734, '120 and '223 claim priority from the '929 and '984 patents. The inequitable conduct during prosecution of the '929 and '984 patents also infects and makes unenforceable the '965, '984, '734, '120 and '223 patents, the subject matter of one or more claims includes Barger-related subject matter at issue during prosecution of the '929, '984 and '739 patents.

112.    Thus, the '965, '984, '734, '120 and '223 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '984, '929 and '739 patents.

113.    In addition, the '893 patent claims priority from the '150 and '285 patents, as well as from the '739 patent. The inequitable conduct during prosecution of Count I Patents '150 and '285 therefore also infects and makes unenforceable the '893 patent. In the '893 patent, the subject matter of one or more claims includes Barger-related subject matter at issue during prosecution of the '150, '285 and '739 patents.

114.    Thus, the '893 patent is rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '150, '285 and '739 patents.

115.    The inequitable conduct concerning the Barger patent renders unenforceable each of the '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents.

**B.    DeBruyn**

116.    Another example of Katz's acts, omissions, pattern or practice of misconduct includes having withheld European Patent Specification No. 32,410 to DeBruyn (the "DeBruyn patent") from the Patent and Trademark Office during the prosecution of many of Katz's early patents. The DeBruyn patent was published on July 22, 1981.

117.    One or more of the '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents are unenforceable as a result of Katz's misconduct pertaining to the DeBruyn patent. Such misconduct occurred in one or more acts before the Patent and Trademark Office during the prosecution of the '551, '065, '360, '762, '863, '285, '893, '984, '734, '120,

-17-

'223 and '965 patents, or patents related thereto, or applications for which these patents allege

priority. Misconduct also occurred in one or more acts before the Patent and Trademark Office

during prosecution of U.S. Patent Nos. 5,048,075 ("the '075 patent"), 5,251,252 ("the '252

patent") and the '739, '150, '929 and '984 patents. The misconduct includes, but is not limited

to, the following:

### i.    Materiality

118.    The DeBruyn patent teaches an interactive telephone voice system for

implementing a lottery. It is relevant to the Katz claims in many respects.

119.    The DeBruyn patent was cited in the same European search report that identified

the Barger patent. The European search report identified the DeBruyn patent as "particularly

relevant."

120.    The DeBruyn patent is substantively identical to Canadian Patent 1,162,336 ("the

DeBruyn Canadian patent"). The DeBruyn patent and DeBruyn Canadian patent disclose many

features relevant to Katz's claims. These include but are not limited to receiving a caller's

telephone number from the public telephone network, prompting the caller with instructions,

receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing

caller-entered data and qualifying callers.

121.    The Director of the Patent and Trademark Office has relied on the substantively

identical DeBruyn Canadian patent in ordering the reexamination of several of Katz's patents,

including the '707 patent, and U.S. Patent Nos. 5,255,309 ("the '309 patent") and 5,259,023 ("the

'023 patent"). These patents are relevant to the validity of the Count I Patents.

122.    Regarding the '309 patent, for example, the Director stated: "In view of the teachings

of [the DeBruyn Canadian Patent], a substantial new question of patentability is raised as to claim 23

of the ['309 patent], and a reexamination of all the patent claims as to the substantial new question of

-18-

patentability is appropriate." Reexamination Control No. 90/006,976, Director Initiated Order For Reexamination mailed March 26, 2004, at 6.

123.    Similarly, the Director has determined that the DeBruyn patent anticipates, for example, at least one claim in each of the '023 and '707 patents under 35 U.S.C. § 102.

124.    An Examiner at the Patent and Trademark Office has determined that the DeBruyn Canadian patent anticipates at least claims 1, 2, 7, 8, 10, 21 and 22-27 of the '023 patent under 35 U.S.C. § 102(b). Reexamination Control Nos. 90/006,977 and 90/007,058 [Merged Proceedings], Office Action mailed September 1, 2005, at 2-9. The Examiner has also relied on the DeBruyn Canadian patent in rejecting claims 5, 6, 22 and 23 of the '023 patent under 35 U.S.C. § 103. *Id.* at 24-26, 28.

125.    The Examiner also has determined that the DeBruyn Canadian patent anticipates at least claims 23, 25-37, 41-43, 46, 50 and 51 of the '309 patent under 35 U.S.C. § 102(b). Reexamination Control Nos. 90/006,976 and 90/007,092 [Merged Proceedings], Office Action mailed September 9, 2005, at 2, 9-19. The Examiner has also relied on the DeBruyn Canadian patent in rejecting claims 1, 7-12, 14, 20, 24, 32, 38-42 and 52-58 of the '309 patent under 35 U.S.C. § 103. *Id.* at 2, 32-43.

126.    Each of the '707, '309 and '023 patents, on its face, is asserted by Katz to be a continuation of the '739 patent discussed above.

### ii.    Intent

127.    The DeBruyn patent was filed in the Patent and Trademark Office on July 22, 1981, nearly four years before Katz's first relevant application. Upon information and belief, Katz had knowledge of the relevance and materiality of the DeBruyn patent to Katz's various claims pending before the Patent and Trademark Office, since at least as early as December 1988 and through at least the European search report.

-19-

128.    Katz failed to disclose this prior art to the Patent and Trademark Office during the prosecution of at least the '739, '150, '075, '929, '984 and '252 patents.

129.    On information and belief, Katz's failure to disclose the DeBruyn patent was done deliberately and with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '739, '150, '075, '929, '984 and '252 patents.

130.    Katz's intentional failure to disclose the DeBruyn patent with knowledge of its materiality during prosecution of the '739, '150, '075, '929, '984 and '252 patents constitutes inequitable conduct.

### iii.    Unenforceability

131.    The '984 patent is rendered unenforceable due to Katz's inequitable conduct during prosecution of their respective applications.

132.    Count I Patents '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents are each related to the '739 patent by virtue of claiming priority from the '739 patent. The inequitable conduct during prosecution of the '739 patent infects and makes all of these Count I Patents unenforceable. In the '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents, the subject matter of one or more claims includes DeBruyn-relevant subject matter at issue during the '739 patent prosecution.

133.    The inequitable conduct during prosecution of the '739 patent also infects and makes unenforceable the '893, 863, '551, '065 and'360 patents, each of which is closely related to the '739 patent (among others). For example, the interrelatedness of these patents and the '739 patent is demonstrated by Katz having disclaimed for each of Count I Patents '893, '863, '551, '065 and'360 any patent term subsequent to the patent term of the '739 patent. In most instances, the disclaimer was in response to double patenting rejections made by the Patent and Trademark Office, which indicated that the claimed inventions were not patentably distinct.

-20-

134.    Thus, the Count I Patents '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '739 patent.

135.    The inequitable conduct that occurred during prosecution of the '252, '929 and '984 patents also infects and makes unenforceable Count I Patents '965, '984, '734, '120 and '223, which claim priority from the '252, '929 and '984 patents.

136.    In Count I Patents '965, '984, '734, '120 and '223, the subject matter of one or more claims includes subject matter that was at issue during prosecution of the '252, '929 and '739 patents as well as Count I Patent '984, and to which DeBruyn would have been relevant.

137.    Thus, the '965, '984, '734, '120 and '223 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '929, '984 and '252 patents.

138.    Count I Patents '893 and '285 claim priority from Count I Patent '150, as well as from the '739 patent The inequitable conduct during prosecution of the '150 patent also infects and makes unenforceable the '893 and '285 patents.  In the '893 and '285 patents, the subject matter of one or more claims includes subject matter that was at issue during prosecution of the '150 and '739 patents and to which DeBruyn would have been relevant.

139.    Thus, the '893 and '285 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '150 and '739 patents.

140.    The inequitable conduct concerning the DeBruyn patent renders unenforceable the '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents.

### C.    Katz PCT

141.    Katz's acts, omissions, pattern or practice of misconduct also included, for example, failing to disclose to the Patent and Trademark Office the publication of Katz's own '375 application, PCT application WO 87/00375 (the "375 application"), during the prosecution of at least the '739 patent.  The '375 application was published on January 15, 1987.

###### i.    Materiality

142.    The published '375 application would be considered prior art for any claims with a filing date of more than a year after the publication date (January 15, 1987).  35 U.S.C. § 102(b). The filing date of the application that issued as the '739 patent was more than one year after the '375 application was published.

143.    The published '375 application is relevant to many of the basic elements under consideration by the Patent and Trademark Office in the '739 and related patents.  In particular, the published '375 application constituted prior art to all the claims that incorporated any new subject matter added in the application for the '739 patent, which was filed on May 16, 1988.

144.    The published '375 application would have been material to the examiner in determining to what claims, if any, Katz might be entitled relating to the '739 patent, including many of the basic elements claimed in the '739 patent such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers.

###### ii.    Intent

145.    Despite knowledge of this reference, which was itself a Katz application, and its materiality, Katz did not bring the published '375 application to the attention of the patent examiner during the prosecution of the '739 patent.  Instead, Katz allowed the examiner to issue the '739 patent without considering the prior art effect of the published '375 application.

146.    Accordingly, Katz's knowing failure to cite this reference to the Patent and Trademark Office as alleged herein constitutes inequitable conduct.

###### iii.    Unenforceability

147.    As the '739 patent is relied upon by Katz as a parent to the '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents, these patents are rendered unenforceable by Katz's earlier omission to the Patent and Trademark Office.

148.    The '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents each contain one or more claims with subject matter that includes subject matter that was at issue during the '739 patent prosecution and to which the '375 application would have been relevant.  The '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents are thus rendered unenforceable through infectious unenforceability.

149.    For example, the interrelatedness of the '893, '863, '551, '065, '360 and '762 patents is demonstrated through Katz disclaiming for each of the '893, '863, '551, 065, '360 and '762 patents any patent term subsequent to the patent term of the '739 patent.

150.    In most instances, the disclaimer was in response to double patenting rejections made by the Patent and Trademark Office, which indicated that the claimed inventions were not patentably distinct.

151.    The inequitable conduct concerning the '375 application renders unenforceable the '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents.

**D.    Periphonics**

152.    Katz's pattern of misconduct also included, for example, withholding relevant and material prior art by the Periphonics Corporation ("Periphonics") from the Patent and Trademark Office during the prosecution of the '707 patent and Count I Patents '965, '285, '893, '762 and '551.  Upon information and belief, the Periphonics prior art became known to Katz at least as early as April 1993.

**i.    Materiality**

153.    Upon information and belief, in or around April 1993, Katz obtained copies of numerous items of relevant prior art by Periphonics.  Such prior art was provided under Bates numbers W72807-W73756 ("the West materials") to Harold Wurst, Esq., of Nilsson, Wurst & Green ("the Nilsson firm") in connection with *First Data Resources, Inc. v. West Interactive Corp.*, CV 91-4471TJH, U.S. District Court, Central District of California ("the West case").

-23-

The Nilsson firm was involved in prosecuting many of Katz's patent applications, some of which would ultimately issue as the patents-in-suit.

154.    During prosecution of U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz submitted only some of the West materials, and withheld or failed to submit to the Patent and Trademark Office other relevant and material West materials.

155.    The West materials provided to Katz included a number of Periphonics references, including (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (W73055-W73095), and (2) Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 ("the VoicePac reference") (W73219-W73302).

156.    The Bank-From-Home reference was, upon information and belief, knowingly withheld by Katz during prosecution of at least these patents with knowledge of their materiality.

157.    The Bank-From-Home reference is highly relevant to many claims of the patents-in-suit.  It describes such limitations of claims of the patents-in-suit as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system.

158.    The VoicePac reference was, upon information and belief, knowingly withheld by Katz during prosecution of at least these patents with knowledge of their materiality.

159.    The VoicePac reference is highly relevant to many claims of the patents-in-suit. It describes such limitations of claims of the patents-in-suit as interfacing callers to the system and transferring callers to a customer service representative.

### ii.    Intent

160.    The Periphonics prior art and other relevant and material West materials constituting prior art came into Katz's knowledge at least as early as April 1993, nineteen months before the '965 patent issued.  Upon information and belief, Katz had knowledge of the

relevance and materiality of the Periphonics and other West materials to claims pending before the Patent and Trademark Office.

161.     Indicating his knowledge of the existence and materiality of this undisclosed material, Katz's application for the '965 patent stated: "During litigation [of the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant. However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)." U.S. Patent Application No. 08/306,456, Paper No. 3, filed November 4, 1994. Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper No. 3, filed November 4, 1994

162.     Katz made the same statements in other applications, which issued as the '707 patent (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994) and the parent application of the '893 patent (IDS filed November 7, 1994, in Application No. 08/306,751).

163.     During the prosecution of still other applications, Katz used similar language that refers the examiner to the references disclosed during prosecution of the '707 patent. These other applications include Count I Patents '863 (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), '762 (IDS filed January 16, 1997) and '551 (IDS filed October 2, 1996).

164.     Katz was under a duty to disclose to the Patent and Trademark Office information material to Katz's applications.

165.     Katz withheld and failed to submit this material prior art.

166.     Katz's intentional failure to disclose all of the relevant and material West materials during prosecution of the '707 patent and the applications for the '965, '285, '863, '893, '762 and '551 patents that were pending before the Patent and Trademark Office, with

-25-

knowledge of its materiality, was a violation of the duty of candor and good faith owed to the Patent and Trademark Office, and constitutes inequitable conduct.

### iii.    Unenforceability

167.    Thus, the Count I Patents '285, '965, '863, '762 and '551 are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

168.    Further, Count I Patents '065, and '360 have specifications substantially identical to those of the '707, '863, '762 and '551 patents.

169.    They rely for priority on the '739 patent, also having a substantially identical specification.

170.    The '065 and '360 patents contain claims with subject matter that was at issue during prosecution of the '707, '863, '762, '551 and '739 patents.

171.    In addition, due to the interrelatedness of the '893, '065 and '360 patents, Katz has disclaimed any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

172.    Because the '893 patent claims priority from the '285 patent, the inequitable conduct during prosecution of the '285 patent also infects and makes the '893 patent unenforceable. In the '893 patent, the subject matter of one or more claims includes subject matter that was at issue during prosecution of the '285 patent and to which the withheld West materials would have been relevant.

173.    Thus, the '893 patent is rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '285 patent.

174.    Thus, Katz's inequitable conduct renders the '551, '065, '360, '762, '863, '285, '893, '984, '734, '120, '223 and '965 patents unenforceable.

DM_US:20597243_1

## II.    False and Misleading Statements

175.    Katz knowingly made false and misleading statements or omissions to the Patent and Trademark Office, including representations about the priority dates for claims of pending Katz applications.

176.    Upon information and belief, such statements were made with the intent that the Patent and Trademark Office would rely upon such false and misleading statements to remove as prior art references that were before the Patent and Trademark Office in Katz's pending applications.

177.    Such false and misleading statements by Katz included statements in the prosecution of application serial number 07/425,779, which issued as the '984 patent.  During that prosecution, the Patent Examiner rejected claim 10 of the application under 35 U.S.C. § 103 "as being unpatentable over Fodale in combination with the teachings of WO 87/00375 (the '375 application')."  Office Action dated March 21, 1991.  In response to this rejection, Katz stated that the cited international application "is not properly a reference against the present case."  Katz's Amendment dated June 20, 1991.

178.    The '375 application was in fact properly cited by the Patent Examiner as a reference against claim 10 of the application.  Nevertheless, claim 10 proceeded and issued as part of the '984 patent.

179.    Upon information and belief, Katz's statement leading to the '984 patent was knowingly false and made with the intent to deceive the Patent and Trademark Office into issuing patent claims in the '984 patent of a scope beyond any to which Katz was entitled.

180.    Katz's conduct violated the duty of candor owed by patent applicants to the Patent and Trademark Office, and constitutes inequitable conduct.

181.    As a result of Katz's inequitable conduct, the '984 patent is unenforceable.

DM_US:20597243_1

182.    The unenforceability of the '984 patent infects and renders unenforceable the '734, '120 and '223 patents through the doctrine of infectious unenforceability.

183.    The 734, '120 and '223 patents share a substantially identical specification with the '984 patent, claim priority to the '984 patent and claim subject matter encompassing similar scope to the rejected application claim 10 of the '984 patent.

184.    Due to the interrelatedness of the '734 and '120 applications and the '984 patent, Katz disclaimed for the '734 and '120 patents any patent term subsequent to the patent term of the '984 patent.  Katz did so in response to double patenting rejections, whereby the Patent and Trademark Office indicated that the claimed inventions in the '734 and '120 patents were not patentably distinct.

185.    Thus, the conduct during prosecution of the '984 patent also renders the '734, '120 and '223 patents unenforceable.

## PRAYER FOR RELIEF

THEREFORE, ConEd prays that the Court grant it the following relief:

(1)    deny any and all relief requested by RAKTL, as set forth in the Request For Relief of the Complaint, and dismiss the Complaint with prejudice;

(2)    declare that the Count I Patents are unenforceable;

(3)    declare that ConEd does not infringe, has not infringed and does not and has not induced infringement of the one or more claims asserted by RAKTL of the Count I Patents;

(4)    declare that one or more claims asserted by RAKTL of the Count I Patents are invalid;

(5)    declare this case to be exceptional as against RAKTL and award ConEd its reasonable attorneys' fees and costs; and

(6)    grant ConEd such other relief as this Court deems just and proper.

Respectfully submitted,

CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC.


/s/ James G. McCarney
By one of its attorneys
James G. McCarney (JM 2200)
Jenifer J. Liu (JL 2773)
HOWREY LLP
153 East 54th Street, 54th Floor
New York, NY 10022
Tel: (212) 896-6500
Fax: (212) 896-6501


Matthew J. Moore
Lisa K. Hsiao
Christopher Cuneo
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800

*Counsel for
Consolidated Edison Company
of New York, Inc., and
Webster Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that copies of the foregoing **ANSWER OF CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. TO RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S COMPLAINT FOR PATENT INFRINGEMENT, AND COUNTERCLAIM,** were served by electronic and regular United States mail, postage prepaid, this 27th day of July, 2007 upon each of the parties listed below:

Celia Goldwag Barenholtz (CB 9126)
COOLEY GODWARD KRONISH LLP
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7798
cbarenholtz@cooley.com

Anthony F. LoCicero (AL 7538)
Richard S. Mandaro (RM 2602)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
alocicero@arelaw.com
rmandaro@arelaw.com

*Counsel for*
*RONALD A. KATZ TECHNOLOGY*
*LICENSING, L.P*

*Counsel for*
*MACY'S INC. (F/K/A FEDERATED*
*DEPARTMENT STORES, INC.),*
*BLOOMINGDALES BY MAIL LTD.,*
*BLOOMINGDALES, INC., FDS BANK, FACS*
*GROUP, INC.*

Dated:  New York, New York
      July 27, 2007

_____/s/Jenifer J. Liu_____
     Jenifer J. Liu (JL 2773)

-30-