UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | : | 07 Civ. 5392 (RMB) (FM) |
| | : | |
| Plaintiff, | : | ANSWER OF WEBSTER BANK, N.A. TO RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S COMPLAINT FOR PATENT INFRINGEMENT, AND COUNTERCLAIM |
| -against- | : | |
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., MACY'S INC. (F/K/A FEDERATED DEPARTMENT STORES, INC.), BLOOMINGDALES BY MAIL LTD., BLOOMINGDALES, INC., FDS BANK, FACS GROUP, INC., AND WEBSTER BANK, N.A., | : | |
| | : | Hon. Richard M. Berman |
| | : | |
| Defendants. | : | ECF Filed |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Defendant, Webster Bank, N.A., ("Webster") hereby answers the Ronald A. Katz

Technology Licensing, L.P. ("RAKTL") Complaint For Patent Infringement ("Complaint") as

follows:

## THE PARTIES

1.      Webster lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 1 of the Complaint and therefore denies the same.

2.      Webster lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 2 of the Complaint and therefore denies the same.

3.      Webster lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 3 of the Complaint and therefore denies the same.

4.      Webster lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 4 of the Complaint and therefore denies the same.

5.      Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint and therefore denies the same.

6.      Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint and therefore denies the same.

7.      Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint and therefore denies the same.

8.      Webster admits that it is a national banking association and maintains a place of business at 145 Bank Street, Waterbury, CT  06702.

## JURISDICTION AND VENUE

9.      Webster admits that this is a civil action for patent infringement arising under the United States patent statutes, 35 U.S.C. § 1 *et seq.*

10.     Webster admits that this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

11.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint and therefore denies the same.

12.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint and therefore denies the same.

13.     Webster admits only that it operates retail bank branches within New York and is subject to this Court's personal jurisdiction.  Webster denies all of the bases on which such personal jurisdiction is premised and the remaining allegations in paragraph 13.

14.     Webster admits that venue is proper in this judicial district under 28 §§ 1391(b)-(c) and 1400(b).

-2-

## BACKGROUND FACTS

15.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint and therefore denies the same.

16.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint and therefore denies the same.

17.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and therefore denies the same.

18.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and therefore denies the same.

19.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and therefore denies the same.

20.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint and therefore denies the same.

21.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint and therefore denies the same.

22.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint and therefore denies the same.

23.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and therefore denies the same.

24.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint and therefore denies the same.

25.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint and therefore denies the same.

DM_US:20612649_1

26.    Webster admits that Katz Technology Licensing, through its licensing arm A2D, L.P., has contacted Webster regarding certain of the patents-in-suit. Webster lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 26 of the Complaint and therefore denies the same.

## THE PATENTS-IN-SUIT

27.    Webster admits that the '968 patent is entitled "Statistical Analysis System For Use With Public Communication Facility," and on its face names Ronald A. Katz as inventor and lists December 20, 1988, as the issue date. Webster admits that the term of the '968 patent extended no later than December 20, 2005. Webster denies the remaining allegations in paragraph 27 of the Complaint.

28.    Webster admits that the '150 patent is entitled "Telephonic Interface Control System," and on its face names Ronald A. Katz as inventor and lists May 29, 1990, as the issue date. Webster admits that the term of the '150 patent extended no later than December 20, 2005. Webster denies the remaining allegations in paragraph 28 of the Complaint.

29.    Webster admits that the '984 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face names Ronald A. Katz as inventor and lists July 7, 1992, as the issue date. Webster denies the remaining allegations in paragraph 29 of the Complaint.

30.    Webster admits that the '252 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face names Ronald A. Katz as inventor and lists October 19, 1993, as the issue date. Webster denies the remaining allegations in paragraph 30 of the Complaint.

-4-

31.     Webster admits that the '309 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor and lists October 19, 1993 as the issue date.  Webster admits that the term of the '309 patent extended no later than December 20, 2005.  Webster denies the remaining allegations in paragraph 31 of the Complaint.

32.     Webster admits that the '285 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face names Ronald A. Katz as inventor and lists September 27, 1994, as the issue date.  Webster admits that the term of the '285 patent extended no later than December 20, 2005.  Webster denies the remaining allegations in paragraph 32 of the Complaint.

33.     Webster admits that the '707 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor.  Webster admits that the term of the '707 patent extended no later than December 20, 2005.  Webster denies the remaining allegations in paragraph 33 of the Complaint.

34.     Webster admits that the '863 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor and lists November 4, 1997, as the issue date.  Webster admits that the term of the '863 patent extended no later than December 20, 2005.  Webster denies the remaining allegations in paragraph 34 of the Complaint.

35.     Webster admits that the '156 patent is entitled "Telephonic-Interface Lottery System," and on its face names Ronald A. Katz as inventor and lists July 28, 1998 as the issue date.  Webster admits that the term of the '156 patent extended no later than December 20, 2005.  Webster denies the remaining allegations in paragraph 35 of the Complaint.

36.     Webster admits that the '551 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor and lists September 29,

1998, as the issue date.  Webster admits that the term of the '551 patent extended no later than December 20, 2005.  Webster denies the remaining allegations in paragraph 36 of the Complaint.

      37.     Webster admits that the '734 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face names Ronald A. Katz as inventor and lists October 27, 1998, as the issue date.  Webster denies the remaining allegations in paragraph 37 of the Complaint.

      38.     Webster admits that the '762 patent is entitled "Telephonic Interface Statistical Analysis System" and on its face names Ronald A. Katz as inventor and lists April 27, 1999, as the issue date.  Webster admits that the term of the '762 patent extended no later than December 20, 2005.  Webster denies the remaining allegations in paragraph 38 of the Complaint.

      39.     Webster admits that the '893 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face names Ronald A. Katz as inventor and lists June 29, 1999, as the issue date.  Webster admits that the term of the '893 patent extended no later than December 20, 2005.  Webster denies the remaining allegations in paragraph 39 of the Complaint.

      40.     Webster admits that the '120 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face names Ronald A. Katz as inventor and lists October 26, 1999, as the issue date.  Webster denies the remaining allegations in paragraph 40 of the Complaint.

      41.     Webster admits that the '021 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as an inventor and lists March 7, 2000, as the issue date.  Webster admits that the term of the '021 patent extended no later than December 20, 2005.  Webster denies the remaining allegations in paragraph 41 of the Complaint.

      42.     Webster admits that the '135 patent is entitled "Telephonic-Interface Lottery System," and on its face names Ronald A. Katz as an inventor and lists March 28, 2000, as the

issue date. Webster admits that the term of the '135 patent extended no later than July 10, 2005. Webster denies the remaining allegations in paragraph 42 of the Complaint.

43.     Webster admits that the '065 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor and lists November 14, 2000, as the issue date. Webster admits that the term of the '065 patent extended no later than July 10, 2005. Webster denies the remaining allegations in paragraph 43 of the Complaint.

44.     Webster admits that the '965 patent is entitled "Voice-Data Telephonic Interface Control System," and on its face names Ronald A. Katz as inventor and lists January 1, 2002, as the issue date. Webster admits that the term of the '965 patent extended no later than December 20, 2005. Webster denies the remaining allegations in paragraph 44 of the Complaint.

45.     Webster admits that the '703 patent is entitled "Telephonic-Interface Lottery System," and on its face names Ronald A. Katz as inventor and lists July 23, 2002, as the issue date. Webster admits that the term of the '703 patent extended no later than July 10, 2005. Webster denies the remaining allegations in paragraph 45 of the Complaint.

46.     Webster admits that the '223 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face names Ronald A. Katz as inventor and lists August 13, 2002, as the issue date. Webster admits that the term of the '223 patent extended no later than July 10, 2005. Webster denies the remaining allegations in paragraph 46 of the Complaint.

47.     Webster admits that the '360 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face names Ronald A. Katz as inventor and lists January 13, 2004, as the issue date. Webster admits that the term of the '360 patent extended no later than July 10, 2005. Webster denies the remaining allegations in paragraph 33 of the Complaint.

-7-

## COUNT I
## (PATENT INFRINGEMENT BY CONSOLIDATED EDISON)

48.     Webster incorporates by reference its responses to paragraphs 1-47 of the Complaint.

49.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 and therefore denies the same.

50.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 and therefore denies the same.

51.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 and therefore denies the same.

52.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 and therefore denies the same.

53.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 and therefore denies the same.

54.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54 and therefore denies the same.

## COUNT II
## (PATENT INFRINGEMENT BY THE MACY'S DEFENDANTS)

55.     Webster incorporates by reference its responses to paragraphs 1-54 of the Complaint.

56.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 and therefore denies the same.

57.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57 and therefore denies the same.

-8-

58.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 and therefore denies the same.

59.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 and therefore denies the same.

60.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60 and therefore denies the same.

61.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61 and therefore denies the same.

## COUNT III
### (PATENT INFRINGEMENT BY WEBSTER BANK)

62.     Webster incorporates by reference its responses to paragraphs 1-61 of the Complaint.

63.     Webster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 and therefore denies the same.

64.     Webster admits that it provides certain customer services over the telephone. Webster denies the remaining allegation in paragraph 64.

65.     Webster denies the allegations in paragraph 65.

66.     Webster denies the allegations in paragraph 66.

67.     Webster denies the allegations in paragraph 67.

68.     Webster denies the allegations in paragraph 68.

DM_US:20612649_1

### FIRST AFFIRMATIVE DEFENSE
### (Non-Infringement)

69.     Webster does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the one or more claims asserted by RAKTL of the '984, '309, '285, '707, '863, '156, '551, '734, '893, '120, '135 and '223 patents (hereinafter "the Count III Patents") individually or collectively.

### SECOND AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

70.     RAKTL is estopped from maintaining that the one or more claims of the Count III Patents cover any telephone systems operated by Webster.

### THIRD AFFIRMATIVE DEFENSE
### (Invalidity Under 35 U.S.C. §§ 101, 102, 103 and 112)

71.     The one or more claims asserted by RAKTL of the Count III Patents are invalid for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103 and 112.

### FOURTH AFFIRMATIVE DEFENSE
### (Inequitable Conduct)

72.     The Count III patents are unenforceable for inequitable conduct committed before the United States Patent and Trademark Office during the prosecution of the applications that issued as these patents and/or related applications as described with particularity in the averments of Webster's Counterclaim below, which averments are realleged and reincorporated herein by reference as if set forth in full.

### FIFTH AFFIRMATIVE DEFENSE
### (Waiver/Estoppel/Laches)

73.     RAKTL's claims are barred by the equitable doctrines of waiver, estoppel and/or laches.

74.     The patents-in-suit are unenforceable due to prosecution laches in light of RAKTL's unreasonable delay in seeking the claims of the patents-in-suit.

75.     The patents-in-suit are unenforceable due to laches in light of RAKTL's unreasonable delay in asserting the claimed inventions.

**SIXTH AFFIRMATIVE DEFENSE**
**(Unclean Hands/Patent Misuse)**

76.     RAKTL is barred from any relief in this action, and the '734, '120 and '223 patents, among others, are unenforceable under the doctrines of unclean hands and/or patent misuse, because RAKTL has asserted the '734, '120 and '223 patents, as well as other patents, with knowledge that at least one claim in each of these patents is invalid.

**SEVENTH AFFIRMATIVE DEFENSE**
**(Statute of Limitations)**

77.     To the extent RAKTL seeks damages for alleged infringement more than six years prior to the filing of the present litigation, RAKTL's claims are barred by the statute of limitations under 35 U.S.C. § 286.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Notice/Marking)**

78.     RAKTL is precluded by 35 U.S.C. § 287 from seeking damages for any alleged infringement prior to providing actual notice of the patents-in-suit to Webster.

**NINTH AFFIRMATIVE DEFENSE**
**(Collateral Estoppel/ Res Judicata)**

79.     RAKTL is barred from any relief in this action as to the '734, '120 and '223 patents under the doctrines of collateral estoppel and/or res judicata because RAKTL has asserted claims or causes of action that have been litigated in prior proceedings at which RAKTL was given full and fair opportunity to litigate claims or causes of action and in which a final judgment was entered.

-11-

## COUNTERCLAIM
### (Declaratory Judgment Regarding Unenforceability)

Counterclaim plaintiff Webster Bank, N.A., ("Webster") alleges the following counterclaim against Counterclaim defendant RAKTL.

80.     Webster incorporates by reference its responses in paragraphs 1-79.

81.     Webster is a national banking association maintaining a place of business at 145 Bank Street, Waterbury, CT 06702.

82.     On information and belief, RAKTL is a limited partnership organized under the laws of the State of California, and having a principal place of business at 9220 Sunset Boulevard, #315, Los Angeles, California 90069.

83.     This Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201 and 2202, and 35 U.S.C. § 1, *et seq.*

84.     RAKTL has submitted to the personal jurisdiction of this Court.

85.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400 because RAKTL filed this action in this district.

86.     RAKTL purports to be the sole holder of the entire right, title and interest in Count III Patents (the '984, '309, '285, '707, '863, '156, '551, '734, '893, '220, '135 and '223 patents).

87.     RAKTL has sued Webster in the present action, alleging infringement of one or more claims of the Count III Patents. Thus, an immediate, real and justiciable controversy exists between RAKTL and Webster with respect to the alleged enforceability of the Count III Patents.

88.     Webster requests a declaratory judgment that the Count III Patents are unenforceable.

-12-

89.    The Count III Patents are unenforceable for inequitable conduct committed before the United States Patent and Trademark Office during the prosecution of the applications that issued as these patents and/or related applications.

90.    During the prosecution of the applications that ultimately led to the issuance of the Count III Patents or the applications upon which priority is claimed, the named inventor, Ronald A. Katz, and/or his attorneys and appointed representatives, individually or collectively (hereafter "Katz"), engaged in inequitable conduct, thereby rendering these patents unenforceable.

91.    Upon information and belief, Katz committed acts or omissions, and/or exercised a pattern or practice of conduct during the prosecution of the applications that issued as the Count III Patents and/or related applications in the Patent and Trademark Office, which violated the duty of candor owed by patent applicants, with the intent to deceive the Patent and Trademark Office and its agents into issuing patent claims of a scope beyond any to which Katz was entitled.  This conduct included intentionally withholding material prior art from the Patent and Trademark Office, and making false and misleading statements.

I.    **Withholding Material Prior Art**

A.    **Barger**

92.    Katz's acts, omissions, pattern or practice of misconduct included, for example, its failure to disclose U.S. Patent No. 4,071,698 to Barger, Jr., et al. ("the Barger patent") to the Patent and Trademark Office during the prosecution of many of Katz's patents, including one or more of the Count III Patents.  The Barger patent issued in January 1978.

93.    One or more of the Count III Patents are unenforceable as a result of Katz's misconduct pertaining to the Barger patent.  Such misconduct occurred in one or more acts before the Patent and Trademark Office during the prosecution of the Count III Patents, or

-13-

patents related thereto, or applications to which these patents allege priority. Misconduct also occurred in one or more acts before the Patent and Trademark Office during the prosecution of U.S. Patent Nos. 6,292,547 ("the '547 patent"), 5,073,929 ("the '929 patent"), 4,930,150 ("the '150 patent"), and 4,845,739 ("the '739 patent"), which feature claims and specifications substantially similar to all of the Count III Patents. The misconduct includes, but is not limited to the following:

### i.    Materiality

94.    The Barger patent teaches an interactive telephone voice system for marketing merchandise. The Barger patent discloses, among other things, that the customer selects and listens to an audio demonstration and may arrange payment by credit card or other means. The disclosed system maintains, for example, a complete record of all transactions, including demonstrations selected by each customer, in order to maintain current inventory records and to determine trends. The system can use this transaction history, for example, to determine whether a customer is a "freeloader," and accordingly limit a customer's access to the system.

95.    As a further example, the system disclosed in the Barger patent is capable of assigning a caller to an operator, who obtains required information from the customer that is placed in a database. When the customer requests a specific demonstration, the operator enters the appropriate code into the system and plays it for the customer. Upon completion of the demonstration, the customer call reverts to a live operator, who will take the order.

96.    The Barger patent is relevant to the claims prosecuted by Katz in the Count III Patents and other patents held by Katz in many respects. As one example, the Barger patent teaches storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

-14-

97.    The Barger patent discloses many of the central features claimed by Katz in various patent applications, including those of the Count III Patents.

98.    The Barger patent would have been material or relevant to the Patent and Trademark Office in deciding whether to issue patents on the Count III Patents and Katz's various other patent applications.

99.    With respect to other Katz patents in the same or similar families as the Count III Patents, third parties have relied on the Barger patent to petition the Patent and Trademark Office to reexamine certain Katz patents, including Count III Patent '707 and the '547 patent. An examiner rejected certain of Katz's pending claims in the applications of the Count III Patent '707 or the '547 patent, based in part on the teachings of the Barger patent, and the Patent and Trademark Office Board of Patent Appeals and Interferences affirmed that rejection in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998), at 13. Count III Patent '707 and the '547 patent contain specifications substantially identical to that of the '739 patent, which in turn are very similar to specifications of the Count III Patents and other patents held by Katz.

### ii.    Intent

100.    The Barger patent was filed in the Patent and Trademark Office on or about January 1978, a full seven years before Katz's first relevant application. Upon information and belief, Katz had knowledge of the relevance and materiality of the Barger patent to Katz's various claims pending before the Patent and Trademark Office since at least as early as December 1988.

101.    Upon information and belief, the European Patent Office sent a search report for one of Katz's corresponding European patent applications to Katz's European patent attorney, Graham Frederick Coles, in or around December 1988. Upon information and belief, Mr. Coles

-15-

sent a copy of the search report to Byard Nilsson, an attorney handling prosecution of many of Katz's applications, in or around January 1989.

102.    That search report identified the Barger patent as being "particularly relevant" to Katz's applications.

103.    Katz was under a duty to disclose to the Patent and Trademark Office information material to Katz's applications (including prior art cited in foreign patent prosecutions).  Katz failed to disclose the Barger patent to the Patent and Trademark Office during the prosecution of at least the '739, '929, '150, and '965 patents, as well as of Count III Patents '285 and '984.

104.    On information and belief, Katz's failure to disclose the Barger patent was done deliberately and with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '739, '929, '150, and '965 patents, as well as of Count III Patents '285 and '984.

105.    Katz's intentional failure to disclose the Barger patent, with knowledge of its materiality during prosecution of the '739, '929, '150, and '965  patents, as well as Count III Patents '984 and '285, constitutes inequitable conduct.

### iii.    Unenforceability

106.    Katz was aware of both the significance and relevance of the Barger patent as alleged herein.  Katz's failure to disclose the Barger patent to the Patent and Trademark Office during prosecution of at least the '739, '929, '150, and '965  patents, as well as Count III Patents '984 and '285,  constituted inequitable conduct.

107.    The '150 and '965 patents, as well as Count III Patents '984 and '285, are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

-16-

108.    All of the Count III Patents, as well as the '065, '360, '762, and '965 patents, are each related to the '739 patent by virtue of claiming priority from the '739 patent; thus the inequitable conduct that occurred during prosecution of the '739 patent infects and renders these patents unenforceable. In each Count III Patent (*i.e.*, the '551, '135, '156, '863, '285, '893, '984, '734, '120, '309, '707, and '223 patents), the subject matter of one or more claims includes Barger-related subject matter at issue during the prosecution of the '739 patent.

109.    The inequitable conduct that occurred during prosecution of the '739 patent also infects and makes unenforceable Count III Patents '893, '863, '551, '309, and '707, each of which is closely related to the '739 patent (among others). The interrelatedness of these Count III Patents and the '739 patent is demonstrated, for example, by Katz having disclaimed for each of Count III Patents '893, '863, '551, '309, and '707 any patent term subsequent to the patent term of the '739 patent. In most instances, the disclaimer was in response to double patenting rejections made by the Patent and Trademark Office, which indicated that the claimed inventions were not patentably distinct.

110.    Thus, all of the Count III Patents, as well as the '065, '360, '762, and '965 patents, are each rendered unenforceable due to Katz's inequitable conduct during prosecution of the '739 patent.

111.    In addition to claiming priority from the '739 patent, Count III Patents '734, '120 and '223 claim priority from the '929 patent and Count III Patent '984. The inequitable conduct during prosecution of the '929 patent and Count III Patent '984 also infects and makes unenforceable Count III Patents '734, '120 and '223, the subject matter of one or more claims of which include Barger-related subject matter at issue during prosecution of Count III Patent '984 and the '929 and '739 patents.

-17-

112.    Thus, Count III Patents '734, '120 and '223 are rendered unenforceable due to the inequitable conduct that occurred during prosecution of Count III Patent '984 and the '929 and '739 patents.

113.    In addition, Count III Patent '893 claims priority from the '150 patent and Count III Patent '285, as well as from the '739 patent. The inequitable conduct during prosecution of the '150 patent and Count III Patent '285 therefore also infects and makes unenforceable Count III Patent '893. In Count III Patent '893, the subject matter of one or more claims includes Barger-related subject matter at issue during prosecution of Count III Patent '285 and the '150 and '739 patents.

114.    Thus, Count III Patent '893 is rendered unenforceable due to the inequitable conduct that occurred during prosecution of Count III Patent '285 and the '150 and '739 patents.

115.    The inequitable conduct concerning the Barger patent renders unenforceable all of the Count III Patents.

### B.    DeBruyn

116.    Another example of Katz's acts, omissions, pattern or practice of misconduct includes having withheld European Patent Specification No. 32,410 to DeBruyn (the "DeBruyn patent") from the Patent and Trademark Office during the prosecution of many of Katz's early patents. The DeBruyn patent was published on July 22, 1981.

117.    One or more of Count III Patents '551, '863, '285, '893, '984, '734, '120, '309, and '707, as well as the '065, '360, '762, '223, and '965 patents, are unenforceable as a result of Katz's misconduct pertaining to the DeBruyn patent. Such misconduct occurred in one or more acts before the Patent and Trademark Office during the prosecution of the foregoing patents, or patents related thereto, or applications for which these patents allege priority. Misconduct also occurred in one or more acts before the Patent and Trademark Office during prosecution of U.S.

-18-

Patent Nos. 5,048,075 ("the '075 patent"), 5,251,252 ('252 patent), the '739, '150, and '929 patents, and Count III Patent '984. The misconduct includes, but is not limited to, the following:

### i.    Materiality

118.    The DeBruyn patent teaches an interactive telephone voice system for implementing a lottery. It is relevant to the Katz claims in many respects.

119.    The DeBruyn patent was cited in the same European search report that identified the Barger patent. The European search report identified the DeBruyn patent as "particularly relevant."

120.    The DeBruyn patent is substantively identical to Canadian Patent 1,162,336 ("the DeBruyn Canadian patent"). The DeBruyn patent and DeBruyn Canadian patent disclose many features relevant to Katz's claims. These include but are not limited to receiving a caller's telephone number from the public telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers.

121.    The Director of the Patent and Trademark Office has relied on the substantively identical DeBruyn Canadian patent in ordering the reexamination of several of Katz's patents, including Count III Patents '707 and '309,and 5,259,023 ("the '023 patent"). These patents are relevant to the validity of the other Count III Patents.

122.    Regarding Count III Patent '309, for example, the Director stated: "In view of the teachings of [the DeBruyn Canadian Patent], a substantial new question of patentability is raised as to claim 23 of [Count III Patent '309], and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate." Reexamination Control No. 90/006,976, Director Initiated Order For Reexamination mailed March 26, 2004, at 6.

DM_US:20612649_1

123.    Similarly, the Director has determined that the DeBruyn patent anticipates, for example, at least one claim in the '023 patent and Count III Patent '707 under 35 U.S.C. § 102.

124.    An Examiner at the Patent and Trademark Office has determined that the DeBruyn Canadian patent anticipates at least claims 1, 2, 7, 8, 10, 21 and 22-27 of the '023 patent under 35 U.S.C. § 102(b).  Reexamination Control Nos. 90/006,977 and 90/007,058 [Merged Proceedings], Office Action mailed September 1, 2005, at 2-9.  The Examiner has also relied on the DeBruyn Canadian patent in rejecting claims 5, 6, 22 and 23 of the '023 patent under 35 U.S.C. § 103.  *Id.* at 24-26, 28.

125.    The Examiner also has determined that the DeBruyn Canadian patent anticipates at least claims 23, 25-37, 41-43, 46, 50 and 51 of Count III Patent '309 under 35 U.S.C. § 102(b). Reexamination Control Nos. 90/006,976 and 90/007,092 [Merged Proceedings], Office Action mailed September 9, 2005, at 2, 9-19.  The Examiner has also relied on the DeBruyn Canadian patent in rejecting claims 1, 7-12, 14, 20, 24, 32, 38-42 and 52-58 of Count III Patent '309 under 35 U.S.C. § 103.  *Id.* at 2, 32-43.

126.    The '023 patent and Count III patents '707 and '309 , on their face, are each asserted by Katz to be a continuation of the '739 patent discussed above.

### ii.    Intent

127.    The DeBruyn patent was filed in the Patent and Trademark Office on July 22, 1981, nearly four years before Katz's first relevant application.  Upon information and belief, Katz had knowledge of the relevance and materiality of the DeBruyn patent to Katz's various claims pending before the Patent and Trademark Office, since at least as early as December 1988 and through at least the European search report.

-20-

128.    Katz failed to disclose this prior art to the Patent and Trademark Office during the prosecution of at least the '739, '150, '075, '929, and '252 patents, as well as of Count III Patent '984.

129.    On information and belief, Katz's failure to disclose the DeBruyn patent was done deliberately and with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '739, '150, '075, '929, and '252 patents, as well as in Count III Patent '984.

130.    Katz's intentional failure to disclose the DeBruyn patent with knowledge of its materiality during prosecution of the '739, '150, '075, '929, and '252 patents, as well as of Count III Patent '984, constitutes inequitable conduct.

### iii.    Unenforceability

131.    Count IIIPatent '984 is rendered unenforceable due to Katz's inequitable conduct during prosecution of their respective applications.

132.    Further, Count III Patents '551, '309, '707, '863, '285, '893, '984, '734, '120 and '223 are each related to the '739 patent by virtue of claiming priority from the '739 patent. The inequitable conduct during prosecution of the '739 patent infects and makes all of these Count III Patents unenforceable. In Count III Patents '551, '309, '707, '863, '285, '893, '984, '734, '120 and '223, the subject matter of one or more claims includes DeBruyn-relevant subject matter at issue during the '739 patent prosecution.

133.    The inequitable conduct during prosecution of the '739 patent also infects and makes unenforceable Count III Patents '893, 863, '551, '309 and'707, each of which is closely related to the '739 patent (among others). For example, the interrelatedness of these patents and the '739 patent is demonstrated by Katz having disclaimed for each of Count III Patents '893, '863, '551, '309 and'707 any patent term subsequent to the patent term of the '739 patent. In

-21-

most instances, the disclaimer was in response to double patenting rejections made by the Patent and Trademark Office, which indicated that the claimed inventions were not patentably distinct.

134.    Thus, Count III Patents '551, '309, '707, '863, '285, '893, '984, '734, '120 and '223 are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '739 patent.

135.    The inequitable conduct that occurred during prosecution of the '252 and '929 patents and Count III Patent '984 also infects and makes unenforceable Count III Patents '734, '120 and '223, which claim priority from the '252 and '929 patents and Count III Patent '984.

136.    In Count III Patents '734, '120 and '223, the subject matter of one or more claims includes subject matter that was at issue during prosecution of the '252, '929 and '739 patents and of Count III Patent '984, all to which DeBruyn would have been relevant.

137.    Thus, Count III Patents '734, '120 and '223 are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '929 and '252 patents and Count III Patent '984.

138.    Count III Patents '893 and '285 claim priority from the '150 and '739 patents. The inequitable conduct during prosecution of the '150 and '739 patents also infects and makes unenforceable Count III Patents '893 and '285. In Count III Patents '893 and '285, the subject matter of one or more claims includes subject matter that was at issue during prosecution of the '150 and '739 patents and to which DeBruyn would have been relevant.

139.    Thus, Count III Patents '893 and '285 are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '150 and '739 patents.

140.    The inequitable conduct concerning the DeBruyn patent thus renders unenforceable Count III Patents '551, '309, '707, '863, '285, '893, '984, '734, '120 and '223.

C.    **Katz PCT**

-22-

141.    Katz's acts, omissions, pattern or practice of misconduct also included, for example, failing to disclose to the Patent and Trademark Office the publication of Katz's own '375 application, PCT application WO 87/00375 (the "375 application"), during the prosecution of at least the '739 patent. The '375 application was published on January 15, 1987.

### i.    Materiality

142.    The published '375 application would be considered prior art for any claims with a filing date of more than a year after the publication date (January 15, 1987). 35 U.S.C. § 102(b). The filing date of the application that issued as the '739 patent was more than one year after the '375 application was published.

143.    The published '375 application is relevant to many of the basic elements under consideration by the Patent and Trademark Office in the '739 and related patents. In particular, the published '375 application constituted prior art to all the claims that incorporated any new subject matter added in the application for the '739 patent, which was filed on May 16, 1988.

144.    The published '375 application would have been material to the examiner in determining to what claims, if any, Katz might be entitled relating to the '739 patent, including many of the basic elements claimed in the '739 patent such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers.

### ii.    Intent

145.    Despite knowledge of this reference, which was itself a Katz application, and its materiality, Katz did not bring the published '375 application to the attention of the patent examiner during the prosecution of the '739 patent. Instead, Katz allowed the examiner to issue the '739 patent without considering the prior art effect of the published '375 application.

-23-

146.    Accordingly, Katz's knowing failure to cite this reference to the Patent and Trademark Office as alleged herein constitutes inequitable conduct.

### iii.    Unenforceability

147.    As the '739 patent is relied upon by Katz as a parent to all of the Count III Patents, the Count III Patents are rendered unenforceable by Katz's earlier omission to the Patent and Trademark Office.

148.    The Count III Patents each contain one or more claims with subject matter that includes subject matter that was at issue during the '739 patent prosecution and to which the '375 application would have been relevant.  The foregoing Count III Patents are thus rendered unenforceable through infectious unenforceability.

149.    For example, the interrelatedness of Count III Patents '893, '863, '551, '309 and '707 patents is demonstrated through Katz having disclaimed for each of Count III Patents '893, '863, '551, 309 and '707 any patent term subsequent to the patent term of the '739 patent.

150.    In most instances, the disclaimer was in response to double patenting rejections made by the Patent and Trademark Office, which indicated that the claimed inventions were not patentably distinct.

151.    The inequitable conduct concerning the '375 application renders unenforceable Count III Patents '551, '309, '707, '863, '285, '893, '984, '734, '120 and '223.

### D.    Periphonics

152.    Katz's pattern of misconduct also included, for example, withholding relevant and material prior art by the Periphonics Corporation ("Periphonics") from the Patent and Trademark Office during the prosecution of Count III Patents '707, '893, '285, and '551 and the '965 and '762 patents.  Upon information and belief, the Periphonics prior art became known to Katz at least as early as April 1993.

-24-

###### i.      Materiality

153.    Upon information and belief, in or around April 1993, Katz obtained copies of numerous items of relevant prior art by Periphonics.  Such prior art was provided under Bates numbers W72807-W73756 ("the West materials") to Harold Wurst, Esq., of Nilsson, Wurst & Green ("the Nilsson firm") in connection with *First Data Resources, Inc. v. West Interactive Corp.*, CV 91-4471TJH, U.S. District Court, Central District of California ("the West case"). The Nilsson firm was involved in prosecuting many of Katz's patent applications, some of which would ultimately issue as the patents-in-suit.

154.    During prosecution of U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz submitted only some of the West materials, and withheld or failed to submit to the Patent and Trademark Office other relevant and material West materials.

155.    The West materials provided to Katz included a number of Periphonics references, including (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (W73055-W73095), and (2) Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 ("the VoicePac reference") (W73219-W73302).

156.    The Bank-From-Home reference was, upon information and belief, knowingly withheld by Katz during prosecution of at least these patents with knowledge of their materiality.

157.    The Bank-From-Home reference is highly relevant to many claims of the patents-in-suit.  It describes such limitations of claims of the patents-in-suit as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system.

158.    The VoicePac reference was, upon information and belief, knowingly withheld by Katz during prosecution of at least these patents with knowledge of their materiality.

DM_US:20612649_1

159.    The VoicePac reference is highly relevant to many claims of the patents-in-suit. It describes such limitations of claims of the patents-in-suit as interfacing callers to the system and transferring callers to a customer service representative.

### ii.    Intent

160.    The Periphonics prior art and other relevant and material West materials constituting prior art came into Katz's knowledge at least as early as April 1993, nineteen months before the '965 patent issued.  Upon information and belief, Katz had knowledge of the relevance and materiality of the Periphonics and other West materials to claims pending before the Patent and Trademark Office.

161.    Indicating his knowledge of the existence and materiality of this undisclosed material, Katz's application for the '965 patent stated: "During litigation [of the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant.  However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)."  U.S. Patent Application No. 08/306,456, Paper No. 3, filed November 4, 1994.  Katz also stated:  "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)."  Paper No. 3, filed November 4, 1994.

162.    Katz made the same statements in other applications, which issued as Count III Patent '707 (IDS filed November 14, 1994), Count III Patent '285 (IDS filed September 20, 1994) and the parent application of Count III Patent '893 (IDS filed November 7, 1994, in Application No. 08/306,751).

163.    During the prosecution of still other applications, Katz used similar language that refers the examiner to the references disclosed during prosecution of Count III Patent '707.

-26-

These other applications include Count III Patent '863 (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996) and Count III Patent '551 (IDS filed October 2, 1996), as well as the '762 (IDS filed January 16, 1997).

164.     Katz was under a duty to disclose to the Patent and Trademark Office information material to Katz's applications.

165.     Katz withheld and failed to submit this material prior art.

166.     Katz's intentional failure to disclose all of the relevant and material West materials during the prosecution of Count III Patent '707 and the applications for Count III Patents '965, '285, '863, '893, '762 and '551 that were pending before the Patent and Trademark Office, with knowledge of its materiality, was a violation of the duty of candor and good faith owed to the Patent and Trademark Office, and constitutes inequitable conduct.

### iii.     Unenforceability

167.     Thus, Count III Patents '285, '707, '863 and '551 are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

168.     Further, the '065, and '360 patents have specifications substantially identical to those of Count III Patents '707, '863, '762 and '551.

169.     The '065, and '360 patents rely for priority on the '739 patent, also having a substantially identical specification.

170.     The '065, '134 and '360 patents contain claims with subject matter that was at issue during prosecution of of Count III Patents '707, '863, '762, '551 and '739.

171.     In addition, due to the interrelatedness of Count III Patent '893 and the '065, '134 and '360 patents, Katz has disclaimed any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

172.    Because Count III Patent '893 claims priority from Count III Patent '285, the inequitable conduct during prosecution of Count III Patent '285 also infects and makes unenforceable Count III Patent '893 . In Count III Patent '893, the subject matter of one or more claims includes subject matter that was at issue during prosecution of Count III Patent '285 and to which the withheld West materials would have been relevant.

173.    Thus, Count III Patent '893 is rendered unenforceable due to the inequitable conduct that occurred during prosecution of Count III Patent '285.

174.    Thus, Katz's inequitable conduct renders unenforceable Count III Patents '551, '707, '863, '285, '893 and '984.

**II.    False and Misleading Statements**

175.    Katz knowingly made false and misleading statements or omissions to the Patent and Trademark Office, including representations about the priority dates for claims of pending Katz applications.

176.    Upon information and belief, such statements were made with the intent that the Patent and Trademark Office would rely upon such false and misleading statements to remove as prior art references that were before the Patent and Trademark Office in Katz's pending applications.

177.    Such false and misleading statements by Katz included statements in the prosecution of application serial number 07/425,779, which issued as Count III Patent '984. During that prosecution, the Patent Examiner rejected claim 10 of the application under 35 U.S.C. § 103 "as being unpatentable over Fodale in combination with the teachings of WO 87/00375 (the '375 application')." Office Action dated March 21, 1991. In response to this rejection, Katz stated that the cited international application "is not properly a reference against the present case." Katz's Amendment dated June 20, 1991.

178.     The '375 application was in fact properly cited by the Patent Examiner as a reference against claim 10 of the application.  Nevertheless, claim 10 proceeded and issued as part of Count III Patent '984.

179.     Upon information and belief, Katz's statement leading to Count III Patent '984 was knowingly false and made with the intent to deceive the Patent and Trademark Office into issuing patent claims in Count III Patent '984 of a scope beyond any to which Katz was entitled.

180.     Katz's conduct violated the duty of candor owed by patent applicants to the Patent and Trademark Office, and constitutes inequitable conduct.

181.     As a result of Katz's inequitable conduct, Count III Patent '984 is unenforceable.

182.     The unenforceability of Count III Patent '984 infects and renders unenforceable Count III Patents '734, '120 and '223 through the doctrine of infectious unenforceability.

183.     Count III Patents 734, '120 and '223 share a substantially identical specification with Count III Patent '984, claim priority to Count III Patent '984, and claim subject matter encompassing similar scope to the rejected application claim 10 of Count III Patent '984.

184.     Due to the interrelatedness of the applications for Count III Patents '734 and '120 and Count III Patent '984, Katz disclaimed for Count III Patents '734 and '120 any patent term subsequent to the patent term of Count III Patent '984.  Katz did so in response to double patenting rejections, whereby the Patent and Trademark Office indicated that the claimed inventions in Count III Patents '734 and '120 were not patentably distinct.

185.     Thus, the conduct during prosecution of Count IIIv'984 patent also renders Count III Patents '734, '120 and '223 unenforceable.

## PRAYER FOR RELIEF

THEREFORE, Webster prays that the Court grant it the following relief:

-29-

(1)     deny any and all relief requested by RAKTL, as set forth in the Request

For Relief of the Complaint, and dismiss the Complaint with prejudice;

(2)     declare that the Count III Patents are unenforceable;

(3)     declare that Webster does not infringe, has not infringed and does not and

has not induced infringement of the one or more claims asserted by RAKTL of the Count

III Patents;

(4)     declare that one or more claims asserted by RAKTL of the Count III

Patents are invalid;

(5)     declare this case to be exceptional as against RAKTL and award Webster

its reasonable attorneys' fees and costs; and

(6)     grant Webster such other relief as this Court deems just and proper.

-30-

Respectfully submitted,

WEBSTER BANK, N.A.


/s/ James G. McCarney
By one of its attorneys
James G. McCarney (JM 2200)
Jenifer J. Liu (JL 2773)
HOWREY LLP
153 East 54th Street, 54th Floor
New York, NY 10022
Tel: (212) 896-6500
Fax: (212) 896-6501

Matthew J. Moore
Lisa K. Hsiao
Christopher Cuneo
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800

*Counsel for*
*Consolidated Edison Company*
*of New York, Inc., and*
*Webster Bank, N.A.*

-31-

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing **ANSWER OF WEBSTER BANK, N.A.
TO RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S COMPLAINT FOR
PATENT INFRINGEMENT, AND COUNTERCLAIM,** were served by electronic and
regular United States mail, postage prepaid, this 10th day of August, 2007 upon each of the
parties listed below:

Celia Goldwag Barenholtz (CB 9126)
COOLEY GODWARD KRONISH LLP
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7798
cbarenholtz@cooley.com

Anthony F. LoCicero (AL 7538)
Richard S. Mandaro (RM 2602)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
alocicero@arelaw.com
rmandaro@arelaw.com

*Counsel for*
*RONALD A. KATZ TECHNOLOGY*
*LICENSING, L.P*

*Counsel for*
*MACY'S INC. (F/K/A FEDERATED*
*DEPARTMENT STORES, INC.),*
*BLOOMINGDALES BY MAIL LTD.,*
*BLOOMINGDALES, INC., FDS BANK, FACS*
*GROUP, INC.*

Dated:  New York, New York
        August 10, 2007

_____/s/Jenifer J. Liu_____
Jenifer J. Liu (JL 2773)

-32-